UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| SCOTT EDWARDS, | : | PRISONER CASE NO. |
| Plaintiff, | : | 3:19-cv-1545 (JCH) |
| v. | : | |
| MAHBOOB ASHRAF, et al., | : | |
| Defendants. | : | NOVEMBER 1, 2019 |

**INITIAL REVIEW ORDER**

**I.  INTRODUCTION**

The plaintiff, Scott Edwards ("Edwards"), incarcerated at the Carl Robinson Correctional Institution in Enfield, Connecticut, has filed a Complaint ("Compl.") (Doc. No. 1) pro se under section 1983 of title 42 of the United States Code.  42 U.S.C. § 1983.  Edwards sought leave to proceed in forma pauperis.  (Doc. No. 2).  On October 9, 2019, the court granted Edwards' application.  (Doc. No. 7).  The Complaint names Dr. Bahboob Ashraf, Nurse Sheila Baldwin, APRN Linda Oeser, and Warden Caron as defendants.  Edwards alleges that the defendants were deliberately indifferent to his serious medical needs.  Edwards seeks damages and injunctive relief from the defendants in their individual and official capacities.  In addition, Edwards has filed a Motion for Preliminary Injunction. (Doc. No. 9).

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28

U.S.C. § 1915A.  In reviewing a pro se complaint, the court must assume the truth of the well-pleaded allegations and interpret them liberally to "raise the strongest arguments [they] suggest[ ]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for pro se litigants).

## II.  ALLEGATIONS

Edwards is a type 2 diabetic with chronic back, leg, and spinal pain.  Compl. ¶ 4.  On May 20, 2019, Edwards was sentenced to a term of imprisonment of thirty months.  Doc. No. 1 ¶ 1.  At sentencing, both Edwards and his attorney raised concerns about continuing to receive epidural cortisone shots to treat extreme pain in his L3-L4 and L4-L5 vertebrae.  Id. ¶ 2.  The judge found the concerns credible and included an order in the Judgment Mittimus that the Department of Correction ensure that Edwards receive the epidural cortisone shots in a timely fashion.  Id. ¶ 3.

Edwards' hospital records from May 2019 also were forwarded to the Department of Correction. Id. ¶ 5.

Dr. Ashraf took x-rays in May 2019, while Edwards was confined at Corrigan Correctional Institution. Id. ¶ 6. The x-ray results showed that an MRI was warranted. Id. The MRI was performed on July 30, 2019. Id. Edwards considers this an inappropriate delay. Id. ¶ 7.

On June 18, 2019, Edwards was transferred to Carl Robinson Correctional Institution. Id. ¶ 8. The facility requires much walking and has an inclined entranceway to the recreation yard. Id. Edwards is unable to negotiate the entranceway and does not attend outdoor recreation. Id.

Edwards' medical condition is aggravated by high blood pressure as well as impaired kidney functioning caused by overprescribing ibuprofen. Id. ¶ 9. Outdoor recreation would help his blood circulation, a necessity for diabetics. Id.

Since his arrival at Carl Robinson Correctional Institution, Edwards has submitted about twelve requests to the medical unit and Dr. Ashraf but has not yet received the court-ordered relief. Id. ¶ 10. He has been added to the medical waiting list instead of being treated on an emergency basis. Id.

III. **ANALYSIS**

Edwards contends that Dr. Ashraf waited too long between the x-rays and MRI, and that the defendants added him to the waiting list instead of immediately arranging for epidural cortisone injections as stated in the Mittimus.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 138

(2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, plaintiff must show both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind. See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 105-106 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." Spavone, 719 F.3d at 138. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." See Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing "death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted).

The defendants also must have been "subjectively reckless in their denial of medical care." Spavone, 719 F.3d at 138. They must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. Id. The defendants "need only be aware of the risk of harm, not intend

4

harm." Id. Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. See Chance, 143 F.3d at 703 (citing Hathaway, 99 F.3d at 553). Nor does a disagreement over the treatment provided show deliberate indifference. Id.

Edwards alleges that he suffers from extreme pain. For purposes of initial review, the court assumes that he has a serious medical need.

Edwards argues that Dr. Ashraf waited too long after the x-rays before scheduling the MRI. Doctors in the Department of Correction are not permitted to order special tests or consultative examinations. All decisions regarding special testing are made by the Utilization Review Committee ("URC"). See Vega v. Rell, No. 3:09cv737(VLB), 2012 WL 2860793, at *5 (D. Conn. July 9, 2012) ("As the URC is charged with making all decisions for special testing or consultative examinations and the defendants cannot order such tests without approval, the plaintiff has not demonstrated deliberate indifference to his medical needs by the defendants with regard to the lack of an MRI."). Edwards' exhibits show that, following the MRI on July 30, Dr. Ashraf followed this procedure by submitting a request to the Utilization Review Committee for consultation with a spinal specialist on August 2, 2019. Compl., Ex. A (Doc. No. 1) at 8. That document also includes a note on August 15, 2019, stating that Dr. Ashraf submitted a request for epidural spinal injections from an interventional radiologist. Id. As Edwards has not alleged facts showing that Dr. Ashraf was responsible for the delay in scheduling the MRI, scheduling a consult, or

obtaining the epidural injections, Edwards fails to state a plausible deliberate indifference claim against Dr. Ashraf.

Edwards also alleges that all defendants denied him epidural injections as ordered by the sentencing court. He has attached a copy of the sentencing transcript. Compl. Ex. B. At sentencing, the court stated that it would "put [the fact that Edwards gets epidural shots] on the mitt so that you get medical watch for your back." Compl., Ex. B (Doc. No. 1) at 17. However, this court is not aware of any cases holding that the sentencing court can dictate medical treatment for an inmate. Further, other courts in this district have concluded that, even if a sentencing court notes that an individual should receive medical attention during his incarceration, corrections officials' failure to provide the same medical treatment that individual received prior to incarceration does not amount to deliberate indifference. Ruocco v. Tung, No. 3:02CV1443(DJS), 2004 WL 721716 (D. Conn. Mar. 30, 2004).

Here, Dr. Ashraf provided treatment in the form of x-rays, an MRI, and a request to the URC for a consultative examination and epidural spinal injections. See Compl., Ex. A at 7-16. Edwards has not alleged facts or submitted exhibits showing that Dr. Ashraf was "subjectively reckless in their denial of medical care." Spavone, 719 F.3d at 138.

However, the Complaint alleges that Edwards was unable to obtain the epidural injections, which he needs to manage the "extreme pains" in his lower back, for nearly three months. Compl. ¶¶ 2, 5-10. Edwards filed his Motion for Preliminary Injunction (Doc. No. 9) on October 30, 2019, indicating that he still has not received the

6

injections Dr. Ashraf requested in August. Allegations that Edwards has been denied medical care for a condition that causes him "extreme pain" for over five months, despite his and Dr. Ashraf's requests, support an inference that an individual or individuals involved with the work of the URC or the provision of medical care have been "deliberately indifferent" to Edwards' needs. See, e.g., Chance, 143 F.3d at 704 (denying motion to dismiss where plaintiff alleged severe tooth pain persisting for six months). At this stage of the proceedings, the court will not dismiss the Complaint. Rather, it will order service of the Complaint, with the right to amend upon identification of the individuals who should be named as defendants.

## ORDERS

This case will proceed on all claims, against all defendants, with instruction to Edwards to amend the Complaint upon identification of the proper defendants.

The court enters the following orders:

(1) **The Clerk shall** verify the current work addresses for defendants Ashraf, Baldwin, Oeser, and Caron with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint and this Order to each defendant at the confirmed address within **fourteen (14) days** of this Order, and report to the court on the status of the waiver request on the twenty-first (21) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint and this Order on defendants Ashraf, Baldwin, Oeser, and Caron in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **fourteen (14) days** from the date of this order and to file a return of service within twenty-one (21) days from the date of this order.

(3)     **The Clerk shall** send written notice to plaintiff of the status of this action, along with a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Court. The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**SO ORDERED.**

Dated this 1st day of November, 2019 at New Haven, Connecticut.

                                                  /s/ Janet C. Hall
                                                Janet C. Hall
                                                United States District Judge